# UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| ANDREW SAPIEN, | ) |
| Petitioner, | ) |
| | ) Case No. 16-0851-CV-W-ODS-P |
| vs. | ) |
| | ) |
| MICHAEL BOWERSOX, | ) |
| Respondent. | ) |

### OPINION AND ORDER DENYING PETITION FOR HABEAS CORPUS AND DENYING THE ISSUANCE OF A CERTIFICATE OF APPEALABILITY

Petitioner, a convicted state prisoner currently confined at the South Central Correctional Center in Licking, Missouri has filed *pro se* this federal petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges his 2008 convictions and sentences for two counts of first-degree statutory sodomy, which were entered in the Circuit Court of Platte County, Missouri. Petitioner's convictions were affirmed on direct appeal. Doc. 10-5; *State v. Sapien*, 337 S.W.3d 72 (Mo. Ct. App. 2011). Petitioner's motion for post-conviction relief filed pursuant to Mo. Sup. Ct. R. 29.15 was denied after an evidentiary hearing (Doc. 10-6, pp. 78-111) and that denial was affirmed on appeal therefrom (Doc. 10-10).

### Statement of Facts

In affirming Petitioner's convictions and sentences, the Missouri Court of Appeals, Western District, set forth the following facts:

> The incidents giving rise to Sapien's sodomy convictions occurred in November and December of 2004. Sapien was living with his father and step-mother; Sapien's biological sister ("M.J.S."), step-brother ("D.T."), and step-sister ("M.T.") also lived in the house. At the time, M.J.S. was 10 years old; D.T. was 11.

The first incident, which occurred in November 2004 after the Thanksgiving break, involved Sapien, M.J.S., and D.T. After watching pornography on the computer, Sapien asked M.J.S. and D.T. whether they could "do [Sapien] a favor." After initially refusing, M.J.S. and D.T. yielded and went with Sapien to his bedroom in the basement. Sapien closed the door, and told M.J.S. and D.T. that they were not going to be let out of the room until they did what he asked. He told them to pull their pants down, and they complied. Sapien then directed M.J.S. and D.T. to engage in sexual acts with each other. He later sodomized M.J.S. while rubbing her vagina with his hand, and he attempted to sodomize D.T.

M.J.S. described a second incident, which occurred a couple of weeks after the first incident. After viewing pornography, Sapien again approached M.J.S. and D.T. and asked them whether they would do him a favor. Sapien took M.J.S. and D.T. to their parents' bedroom upstairs. Sapien then told D.T. to leave, and took M.J.S. to a downstairs bathroom, lubricated his penis, and sodomized her.

D.T. also described other incidents in which he was sodomized by Sapien. During these incidents, Sapien had D.T. get on his hands and knees while Sapien got on his knees behind D.T. D.T. testified that Sapien's penis was definitely inside D.T.'s "butt" on these other occasions. He testified that these incidents occurred once in M.T.'s bedroom, and otherwise in Sapien's bedroom. D.T. testified that M.J.S. was present during the other incidents, except on one occasion when she acted as a look-out and alerted Sapien and D.T. when Sapien's mother returned home.

Neither M.J.S. nor D.T. initially told anyone about the first incident. Following the second incident, M.J.S. told M.T., her older step-sister, what had happened; however, the girls did not inform either of their parents at that time. M.T. testified at trial that she had herself observed a further incident, which involved Sapien and D.T. in the bathroom in November–December 2004. M.T. witnessed Sapien standing behind D.T. while both had their pants down; D.T. was on his knees, bent over the toilet. M.T. testified that she did not immediately

2

reveal this incident to anyone because Sapien had raped her previously, and she was scared of him.

In January 2005, M.J.S. was again approached by Sapien to "do a job." This time, she refused and, with M.T., told her parents about Sapien's behavior. Sapien fled the house quickly, not even bothering to put on shoes, despite the fact that it was cold and snowy.

M.J.S. and D.T. were interviewed by police and examined by doctors. The examinations, performed by Dr. Michael Moran, did not show any physical abnormalities, although Dr. Moran testified that sodomization trauma often heals over time.

Jill Hazell, a member of Synergy Services, a child advocacy center, interviewed M.J.S. and D.T. individually on February 10, 2005. These interviews were recorded and transcribed, and admitted in evidence during Sapien's trial.

Sapien was initially charged with two counts of child molestation in the first degree (one for the acts involving M.J.S. and one for the acts involving D.T.). The State subsequently filed a first amended information amending both charges from child molestation in the first degree to the greater offense of statutory sodomy in the first degree. Prior to doing so, the State had notified defense counsel of its intention to file the amended charges, indicating that it would forego filing them if Sapien would enter a plea of guilty to the lesser charges of child endangerment in the first degree and accept a proposed disposition. Sapien rejected the State's plea offer, and the State thereafter filed the enhanced charges.

Sapien filed a motion to dismiss the first amended information, arguing that the filing of the new, heightened charges constituted vindictive prosecution because it was done in response to his rejection of the plea proposal. The motion was denied.

Doc. 10-5, pp. 2-4; *Sapien*, 337 S.W.3d at 74-75.

Before the state court findings may be set aside, a federal court must conclude that the state court's findings of fact lack even fair support in the record. *Marshall v. Lonberger*, 459
3

U.S. 422, 432 (1983). Credibility determinations are left for the state court to decide. *Graham v. Solem*, 728 F.2d 1533, 1540 (8th Cir. en banc), *cert. denied*, 469 U.S. 842 (1984). It is Petitioner's burden to establish by clear and convincing evidence that the state court findings are erroneous. 28 U.S.C. § 2254(e)(1).[1] Because the state court's findings of fact have fair support in the record and because Petitioner has failed to establish by clear and convincing evidence that the state court findings are erroneous, the Court defers to and adopts those factual conclusions.

### Discussion

Petitioner raises the following grounds for relief: (1) the trial court erred in allowing M.T. to testify that she had been raped previously by Petitioner; (2) the trial court erred in denying Petitioner's motion to dismiss the first amended information, because the amended charges were filed against Petitioner for refusing the plea offer; (3) the prosecution presented a plea offer that could not legally be accepted and filed enhanced charges after Petitioner refused; and (4) trial counsel was ineffective for entering Petitioner's juvenile record into evidence, which supported the State's position for a harsh sentence. Doc. 1, pp. 5-18. Respondent argues that Ground 1 is not cognizable and, alternatively, is without merit and that Grounds 2-4 are without merit. Doc. 10.

### *I. Ground 1 is without merit.*

In Ground 1, Petitioner argues that the trial court erred in allowing M.T. to testify that she had been raped previously by Petitioner. Doc. 1, pp. 5, 16. "Questions regarding admissibility of evidence are matters of state law, and they are reviewed in federal habeas inquiries only to determine whether an alleged error infringes upon a specific constitutional protection or is so

---

[1] In a proceeding instituted by an application for writ of habeas corpus by a person in custody pursuant to a judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

4

Case 4:16-cv-00851-ODS   Document 13   Filed 10/24/16   Page 4 of 15

prejudicial as to be a denial of due process." *Rousan v. Roper*, 436 F.3d 951, 958 (8th Cir.), *cert. denied*, 549 U.S. 835 (2006) (quoting *Logan v. Lockhart*, 994 F.2d 1324, 1330 (8th Cir.1993)). Petitioner must show that "the alleged improprieties were so egregious that they fatally infected the proceedings and rendered his entire trial fundamentally unfair." *Id*.

The Missouri Court of Appeals, Western District, denied Ground 1 as follows:

> In his first point, Sapien argues that the circuit court erred in allowing M.T.'s testimony regarding his prior rape of her. In his cross-examination of M.T., Sapien's counsel highlighted the fact that, after discovering Sapien and D.T. apparently engaged in a sexual act in her bathroom, M.T. "[d]idn't [immediately] tell anybody about it" or "bring it to anybody's attention" but, instead, simply "went downstairs, sat on the couch, and watched TV." (M.T. and M.J.S. together informed their parents of Sapien's sexual acts involving M.J.S. and D.T. several weeks later.) In response to this cross-examination, the prosecution argued that Sapien had opened the door concerning the reasons for M.T.'s delayed reporting of what she had witnessed. The circuit court agreed. Over Sapien's objection, the court permitted the State on redirect examination to elicit testimony from M.T. that the reason she had not immediately reported Sapien's misconduct was because she was scared of him, because he had previously raped her.
>
> We need not decide whether the circuit court properly exercised its discretion in permitting testimony concerning Sapien's prior rape of M.T. Even if the court's evidentiary ruling were erroneous, it would not justify reversal because Sapien has failed to establish that he suffered sufficient prejudice to require a new trial. . . .
>
> We first note that the evidence concerning the uncharged offense admitted during the guilt phase of Sapien's trial was exceedingly limited and was essentially limited to M.T.'s three-word response—"He raped me."—to a question by the prosecution as to the source of her fear of Sapien. While it is a very serious allegation, it is significant that this issue was not highlighted during the testimony and *no* details concerning this other incident were provided to the jury. During closing arguments, the State referenced this allegation solely to

5

argue that the jury should credit M.T.'s testimony as to the incident she had witnessed.

We also note that the evidence against Sapien was strong. While there was no physical evidence of his offenses, the testimony of his two victims, and their out-of-court statements, corroborated each other's accounts. The essence of the victims' accounts remained unchanged and consistent across the years and multiple retellings: Sapien's viewing pornography on the computer and then asking them to "do him a favor"; Sapien's engaging in acts of anal intercourse with each child; D.T.'s watching the door while Sapien sodomized M.J.S. in Sapien's bedroom; Sapien's telling the children not to tell their parents or the authorities; the physical position in which Sapien put the children when sodomizing them; and his use of a particular lubricant. While the dissent points out certain specific inconsistencies in the children's testimony, "in cases dealing with very sensitive subjects, it is common for the testimony of a victim of tender years to contain some variations, contradictions or lapses in memory." *State v. Kelley,* 945 S.W.2d 611, 615 (Mo.App.1997) (citation and internal quotation marks omitted). The children's testimony was also corroborated by M.T.'s testimony as to the incident that she witnessed involving D.T.

It is also significant that, after his parents had been told and the police were called, Sapien fled from the home. Indeed, Sapien was in such a hurry that he left without shoes or a jacket, despite the fact that it was a cold January day with snow on the ground. His flight is significant additional evidence supporting a finding of guilt. *See, e.g., State v. Moyers,* 266 S.W.3d 272, 284 (Mo.App.2008).

Despite the emotional nature of the mention of the rape of the witness, in these circumstances we cannot conclude that there is a reasonable probability that the jury would have reached a different conclusion but for the allegedly erroneously-admitted evidence. We, therefore, deny Sapien's first point.

Doc. 10-5, pp. 4-7; *Sapien*, 337 S.W.3d at 76-77 (alterations added, footnote omitted).

Petitioner fails to establish that the state court made an objectively unreasonable determination in finding that Petitioner was not sufficiently prejudiced by M.T.'s testimony. *See Fry v. Pliler*, 551 U.S. 112, 119 (2007) ("[W]hen a state court determines that a constitutional violation is harmless, a federal court may not award habeas relief under § 2254 unless *the harmlessness determination itself* was unreasonable.") (emphasis in original). In assessing the prejudicial impact of a constitutional error in a state-court criminal trial, Petitioner must establish that the error had a "substantial and injurious effect or influence in determining the jury's verdict." *Yang v. Roy*, 743 F.3d 622, 626 (8th Cir. 2014) (internal quotation omitted). "A 'substantial and injurious effect' occurs when the court finds itself in 'grave doubt' about the effect of the error on the jury's verdict." *See Toua Hong Chang v. Minnesota*, 521 F.3d 828, 832 n.2 (8th Cir.), *cert. denied*, 129 S. Ct. 314 (2008) (quoting *O'Neal v. McAninch*, 513 U.S. 432, 435 (1995)). "'Grave doubt' exists where the issue of harmlessness is 'so evenly balanced that [the court] feels [itself] in virtual equipoise as to the harmlessness of the error.' *Id.* (alterations in original.

Due to the limited nature of M.T.'s testimony that she was raped by Petitioner and due to the nature of the evidence otherwise presented at trial, this Court finds that Petitioner fails to establish that the alleged error has a substantial and injurious effect in determining the jury's verdict. Because the state courts' determinations as to Ground 1 did not result in "a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or in "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," *see* 28 U.S.C. §2254(d)(1) and (2), Ground 1 is denied.

7

Case 4:16-cv-00851-ODS   Document 13   Filed 10/24/16   Page 7 of 15

### *II. Grounds 2 and 3 are without merit.*

In Ground 2, Petitioner argues that the trial court erred in denying Petitioner's motion to dismiss the first amended information, because the amended charges were filed against Petitioner for refusing the plea offer. Doc. 1, pp. 6-16-17. In Ground 3, Petitioner argues that the prosecution presented a plea offer that could not legally be accepted and filed enhanced charges after Petitioner refused. *Id.* at 8, 17-18. Petitioner contends that he could not have accepted the offer because the plea offer would not have required Petitioner to register as a sex offender, even though the reduced charges would have required lifetime sex offender registration.

Respondent argues that Grounds 2 and 3 essentially are the same claim and should be denied for the same reasons. Doc. 10, pp. 3-4. In reply, Petitioner claims that he raised Ground 3 separately from Ground 2 in order "to highlight the vindictiveness of the Prosecution offering a deal that could not have been legally accepted, then punishing him for not accepting it." Doc. 12, p. 3. Petitioner argues that "[t]he state courts have consistently ignored this aspect of ground two, and so it has never been addressed." *Id.* This Court finds that Grounds 2 and 3 raise essentially the same grounds of prosecutorial vindictiveness that can be denied for the reasons set forth in the state appellate court's opinion.

The Missouri Court of Appeals, Western District, denied Grounds 2 and 3 as follows:

> A defendant can show prosecutorial vindictiveness in two different ways. *State v. Potts,* 181 S.W.3d 228, 233 (Mo. App. 2005). In certain circumstances, a defendant may rely upon a presumption of prosecutorial vindictiveness, which arises when the circumstances create a reasonable likelihood of vindictiveness. *Id.* If this presumption is triggered, the burden of production shifts to the State to provide an objective, on-the-record reason for filing the enhanced charge besides punishing a defendant for exercising constitutional rights. *Chrisman v. State,* 297 S.W.3d 145, 148 (Mo. App. 2009).

Where the presumption is inapplicable, a defendant can prove vindictiveness by putting on evidence of actual vindictiveness. *Potts,* 181 S.W.3d at 233–34. The defendant must show that the prosecutor's actual purpose in bringing enhanced charges was to penalize the defendant for exercising a constitutional right. *Id.* at 234.

As a general proposition, a presumption of prosecutorial vindictiveness does not apply where enhanced charges are filed against a defendant in connection with pretrial plea negotiations. In *Bordenkircher v. Hayes,* 434 U.S. 357, 98 S. Ct. 663, 54 L.Ed.2d 604 (1978), the defendant was originally indicted for uttering a forged instrument. *Id.* at 358, 98 S. Ct. 663. During subsequent plea negotiations, the prosecutor informed the defendant that, if the defendant did not plead guilty, he would re-indict with an additional, and more severe, charge. *Id.* at 358–59, 98 S. Ct. 663. The State did not contest either that the prosecutor possessed the evidence regarding the additional charge at the time of the original indictment or that the defendant's rejection of the plea agreement led to the additional charge. *Id.* at 359, 98 S. Ct. 663.

*Bordenkircher* recognized that the prospect of a trial on enhanced charges likely has the effect of reducing defendants' willingness to exercise their right to trial; the Court nevertheless held that such an effect must be tolerated if the plea bargaining system is to be accepted. *Id.* at 364, 98 S. Ct. 663. Due process is not violated so long as the enhanced charges are supported by probable cause, and the defendant is free to accept or reject the plea offer. *Id.* at 363–64, 98 S. Ct. 663. Because the prosecution is permitted to attempt to induce guilty pleas, *Bordenkircher* concluded that it is best that such efforts take place in the open with clear communication between opposing counsel. *Id.* at 364–65, 98 S. Ct. 663.

*Bordenkircher* was followed in *Goodwin,* 457 U.S. 368, 102 S. Ct. 2485. *Goodwin* observed that the distinction between a prosecutor dismissing charges from an original indictment as an inducement for a plea of guilty, and a prosecutor adding charges after plea negotiations failed, was one without a constitutional difference. *Id.* at 378 n. 10, 102 S. Ct. 2485. Thus, prosecutors can induce guilty pleas either by charging heavily up front and offering to dismiss charges or amend them to lesser offenses or, instead, by charging lightly at the

9

outset and warning of possible additional charges; in neither case does a presumption of vindictiveness arise. For just as a prosecutor may forgo legitimate charges already brought in an effort to save the time and expense of trial, a prosecutor may file additional charges if an initial expectation that a defendant would plead guilty to lesser charges proves unfounded. *Id.* at 378, 102 S. Ct. 2485. As long as the charges are supported by probable cause, a prosecutor can raise the prospect of enhanced or additional charges in order to induce a guilty plea, just as the prosecutor can bring such charges at the outset and offer to reduce or drop them.

The case at bar is indistinguishable in all relevant aspects from *Bordenkircher* and *Goodwin.* Here, Sapien was initially charged with two counts of child molestation, a Class B felony. In subsequent negotiations, the prosecutor offered to amend the information to charge two counts of child endangerment in the first degree, a Class C felony. The prosecutor also informed Sapien that, should he not accept the offer, the State would file an amended information, charging him with the unclassified felonies of statutory sodomy in the first degree. Thus, the prosecutor initially charged Sapien with appropriate charges and then offered to either reduce the charges in the event of a guilty plea or assert more severe charges if plea negotiations failed. This is an amalgam of the tactics approved by the Supreme Court in *Bordenkircher* and *Goodwin.* No presumption of vindictiveness arises.

Sapien contends that vindictiveness is established because the State possessed all of the necessary evidence for bringing the enhanced charges at the time of the original indictment and acknowledged that Sapien's refusal to plead guilty led to the enhanced charges. Under *Bordenkircher* and *Goodwin,* however, these facts are irrelevant (absent a presumption of vindictiveness which is inapplicable here). Indeed, the prosecution in *Bordenkircher* made a similar acknowledgment that its charging decisions had been motivated by the defendant's refusal to plead guilty. *See* 434 U.S. at 359, 98 S. Ct. 663. We deny Sapien's third point.

Doc. 10-5, pp. 9-12; *Sapien*, 337 S.W.3d at 78-80 (footnotes omitted).

Petitioner fails to establish that the state court opinion unreasonably applied *Bordenkircher* and *Goodwin* to the facts in this case. It was not unreasonable for the state court to find that the prosecutor's tactics in Petitioner's case was an amalgam of the tactics approved by the Supreme Court in those cases. Although Petitioner argues in Ground 3 that he could not have accepted the plea because it permitted a sentence that was invalid under state law, Petitioner fails to establish how such facts would have dictated a different result in light of *Bordenkircher* and *Goodwin*. Even if the plea offer would have had to have been renegotiated or amended to correct for any mandatory sentences ascribed to the proposed reduced charges, the state court's determination on Petitioner's claim of prosecutorial vindictiveness remains reasonable, in that the enhanced charges filed by the prosecutor were supported by probable cause and the prosecutor intended the prospect of the enhanced charges to induce a guilty plea, which Petitioner chose not to enter.

Because the state courts' determinations as to Grounds 2 and 3 did not result in "a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or in "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," *see* 28 U.S.C. §2254(d)(1) and (2), Grounds 2 and 3 are denied.

### *III. Ground 4 is without merit.*

In Ground 4, Petitioner contends that trial counsel was ineffective for entering Petitioner's juvenile record into evidence, which supported the State's position for a harsh sentence. Doc. 1, pp. 9, 18. In order for Petitioner to successfully assert a claim for ineffective assistance of counsel, Petitioner must demonstrate that his attorney's performance "fell below an objective standard of reasonableness" and that "the deficient performance" actually prejudiced

him. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). "A court considering a claim of ineffective assistance of counsel must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quoting *Strickland*, 466 U.S. at 689). Petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687.

To satisfy the prejudice prong, Petitioner must show that there is a reasonable probability that, but for counsels unprofessional errors, the result of the proceedings would have been different. *Id.* at 694. This Court, moreover, may not grant habeas relief unless the state appellate court's decision "was contrary to, or an unreasonable application of, the standard articulated by the [United States] Supreme Court in *Strickland*." *Owens v. Dormire*, 198 F.3d 679, 681 (8th Cir. 1999), *cert. denied*, 530 U.S. 1265 (2000).

The Missouri Court of Appeals, Western District, set forth the *Strickland* standard and denied Ground 4 as follows:

> Mr. Sapien alleges that trial counsel was ineffective because he offered into evidence Mr. Sapien's Safe School Report from his juvenile file (Defense Exhibit S), records from his psychiatric hospitalization at St. Luke's Northland Hospital (Defense Exhibit W), his juvenile court social history (Defense Exhibit T) and his psychological evaluation from 2003 (Defense Exhibit K). Mr. Sapien also alleges trial counsel was ineffective for failing to obtain and review Mr. Sapien's complete juvenile records before trial. Mr. Sapien asserts that competent trial counsel, upon reviewing the record, would have refrained from offering them because of the prejudicial nature which unreasonably supported the State's argument for harsh sentences. We disagree.
>
> . . . .
>
> In denying Mr. Sapien's claim, the motion court stated that trial counsel pursued a reasonable trial strategy during the sentencing phase of trial. Despite the motion court rejecting trial counsel's request for a continuance to review Mr. Sapien's juvenile record, trial counsel introduced several exhibits indicating Mr. Sapien's mental state and intelligence level. Trial counsel introduced these

documents because he felt they were "critical to, number one, a full and fair presentation of the background concerning the offense that the juvenile court involved with Mr. Sapien." This introduction led to the State's questioning of Ms. Taylor, a custodian of records for the Platte County Juvenile Court, which provided deeper insight into the dangerous nature of Mr. Sapien's mental state. Trial counsel testified that if he had had more time to review the documents he probably would not have introduced them because the benefit was substantially outweighed by the detriment. Reliance on this statement to suggest incompetent assistance would be a direct example of a distorting effect of hindsight and must be eliminated to evaluate trial counsel's perspective at the time. During the post-conviction evidentiary hearing, trial counsel testified that he did not consider refraining from using the exhibits in light of the negative connotations. He also testified that he introduced the exhibits to show a "full and fair presentation" of Mr. Sapien's background. He believed there were certain portions of the documents "that [he] thought would help Mr. Sapien," although "there were other portions … that [he] may have missed or overlooked that perhaps were not as beneficial to him." Although trial counsel recognized the negative implications of the exhibits offered, it is clear he reviewed the exhibits and believed them to be "extremely critical" for consideration. Therefore, Mr. Sapien has failed to show that trial counsel's errors were so serious as to suggest counsel's performance fell below any objective standard of reasonableness.

Regarding the prejudicial effect of trial counsel's conduct, Mr. Sapien asserts that the introduction of the exhibits was prejudicial because it supported the State's position. Mr. Sapien cites *Gant v. State* 211 S.W.3d 655, 659 (Mo. App. W.D. 2007), as support for his claim that trial counsel's admission of evidence tending to support the State's position can be a significant factor in finding ineffective assistance of counsel. *Gant* is distinguishable, however, because there "the State's position where the State submitted insufficient evidence to prove probable cause." *Id*. at 659. Here, unlike in *Gant*, trial counsel did not establish an essential element of the State's case after the State failed to do so. Trial counsel introduced the additional evidence to provide a full representation of Mr. Sapien's condition in a case where the State had fully met its burden. Trial counsel made a strategic choice to admit documents containing mitigating evidence even though it also contained aggravating evidence the State was able to use to its advantage. Therefore, introduction of the challenged exhibits remains a simple matter of trial strategy, which is virtually unchallengeable in an ineffective assistance claim.

Mr. Sapien also argues that "there is at least a reasonable likelihood that but for counsel's admission of these exhibits, the jury would have recommended a sentence of less than thirty years imprisonment for each count of first-degree statutory sodomy." . . . . The evidence was not offered during trial. Instead, it was offered at the sentencing phase, after the jury reached a guilty verdict. Arguments related to future dangerousness are allowed during the sentencing phase in capital

13

cases, where they do not suggest or imply that jurors would be responsible if the defendant harms anyone else in the future. *State v. Deck*, 303 S.W.3d 527, 544 (Mo. banc 2010). In fact, in *Simmons v. South Carolina*, the U.S. Supreme Court stated:

> [a]rguments relating to a defendant's future dangerousness ordinarily would be inappropriate at the guilt phase of trial, as the jury is not free to convict a defendant simply because he poses a future danger; nor is a defendant's future dangerousness likely relevant to the question whether each element of an alleged offense has been proved beyond a reasonable doubt. But where the jury has sentencing responsibilities in a capital trial, many issues that are irrelevant to the guilt-innocence determination step into the foreground and require consideration at the sentencing phase. The defendant's character, prior criminal history, mental capacity, background, and age are just a few of the many factors, in addition to future dangerousness, that a jury may consider in fixing appropriate punishment.

512 U.S. 154, 163 (1994). As noted above, trial counsel introduced the exhibits to provide a full picture of Mr. Sapien's background. Regardless of the unsuccessful result, this falls directly in line with argument deemed permissible in *Simmons*.

In addition, Mr. Sapien has failed to show a reasonable probability that he would have received a lesser sentence if Exhibits R, S, T, and W had not been introduced. Mr. Sapien argues that the State used the evidence to argue for fifty-year sentences on each count. The jury, however, sentenced Mr. Sapien to thirty years on each count of first-degree statutory sodomy. Rather, the reasonable probability is that the jury, although presented with mitigating and aggravating evidence at sentencing, imposed sentences based on the evidence for the charges. Therefore, prejudice has not been established, and we deny this point.

Doc. 10-10, pp. 13-17 (ellipses added, remaining alterations in original).

In holding that Petitioner's claim of ineffective assistance of counsel in Ground 4 did not merit post-conviction relief, the state appellate court identified and applied reasonably the *Strickland* standard. Petitioner fails to establish that it was unreasonable for the state appellate court to find that trial counsel's actions amounted to reasonable trial strategy or that, alternatively, Petitioner was not prejudiced by trial counsel's alleged failures. *See Blackmon v.*

14

*White*, 825 F.2d 1263, 1265 (8th Cir. 1987) ("[T]he courts must resist the temptation to second-guess a lawyer's trial strategy; the lawyer makes choices based on the law as it appears at the time, the facts as disclosed . . . and his best judgment as to the attitudes and sympathies of judge and jury."); s*ee also Shaw v. U.S.*, 24 F.3d 1040, 1042 (8th Cir. 1994) (trial counsel's reasonable trial strategies cannot constitute ineffective assistance, even if they are unsuccessful).

Because the state courts' determinations as to Ground 4 did not result in "a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or in "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," *see* 28 U.S.C. §2254(d)(1) and (2), Ground 4 is denied.

## Certificate of Appealability

Under 28 U.S.C. § 2253(c), the Court may issue a certificate of appealability only "where a petitioner has made a substantial showing of the denial of a constitutional right." To satisfy this standard, Petitioner must show that a "reasonable jurist" would find the district court ruling on the constitutional claim(s) "debatable or wrong." *Tennard v. Dretke*, 542 U.S. 274, 276 (2004). Because Petitioner has not met this standard, a certificate of appealability will be denied.

Accordingly, it is **ORDERED** that:

(1) the petition for writ of habeas corpus is denied;

(2) the issuance of a certificate of appealability is denied; and

(3) this case is dismissed.

    /s/ Ortrie D. Smith
    ORTRIE D. SMITH
    UNITED STATES DISTRICT JUDGE

Dated: October 24, 2016.